UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ERIC A. PAULSEN                                                    CIVIL ACTION

VERSUS                                                              No. 06-9546

STATE FARM INSURANCE COMPANY, *et al.*                    SECTION:  I/1

## ORDER AND REASONS

Before the Court is a motion for summary judgment filed on behalf of defendant, State

Farm Fire and Casualty Company ("State Farm"),[1] in its fiduciary capacity as Write Your Own

("WYO") insurance provider.[2]  For the following reasons, the motion is **GRANTED IN PART**

**AND DENIED IN PART**.

### BACKGROUND

Plaintiff, Eric A. Paulsen ("Paulsen"), owns two properties that were damaged when

---

[1] R. Doc. No. 96.

[2] Insurance companies who issue flood insurance policies pursuant to the National Flood Insurance Act, 42 U.S.C. §§ 4001-4129 (2006), act as fiscal agents of the federal government.  42 U.S.C. § 4071 (a); 44 C.F.R. § 62.23(f)-(g) (2007); *see Wright v. Allstate Ins. Co.* (*Wright I*), 415 F.3d 384, 386 (5th Cir. 2005).

Hurricane Katrina made landfall in the New Orleans area on August 29, 2005.[3]  One property is located in Slidell, Louisiana ("Slidell property"); the other property is located in New Orleans, Louisiana ("New Orleans property").[4]  When Katrina made landfall, the properties were insured by a Standard Flood Insurance Policy ("SFIP") issued by State Farm in its capacity as a WYO program carrier through its participation in the National Flood Insurance Program ("NFIP").[5]  The flood insurance policy on the Slidell property limited the building coverage to $220,600; the flood insurance policy on the New Orleans property limited the building coverage to $250,000.[6]  Paulsen was paid $174,712.91 for flood damage to the Slidell property; he was paid $174,020.21 for flood damage to the New Orleans property.[7]

Paulsen filed this lawsuit in state court on August 28, 2006, bringing claims against State Farm pursuant to La. Rev. Stat. Ann. §§ 22:658 and 1220(A) for breach of its duty to advise and inform him regarding coverage, breach of contract, unjust enrichment, and abuse of his rights.[8]  Paulsen further alleged negligent misrepresentation and fraud pursuant to La. Civil Code Ann.

---

[3] R. Doc. No. 4-2, state ct. pet. ¶¶ 1, 18; R. Doc. No. 102-3, mem. opp'n to mot. summ. j., Paulsen aff. ¶¶ 2-3.

[4] Pet. ¶ 14; Paulsen aff. ¶¶ 2-3.

[5] Pet. ¶ 11; R. Doc. No. 96-4, mot. summ. j., ex. A, Slidell property flood policy declarations page; R. Doc. No. 96-5, ex. B, New Orleans property flood policy declarations page.  Paulsen also held, with State Farm, homeowner's insurance policies on these properties.  *See* pet. ¶ 14; R. Doc. No. 97-5, partial mot. summ. j. regarding attorney's fees, ex. A-1, Slidell property homeowner's policy renewal certificate; R. Doc. No. 97-5, ex. B-1, New Orleans property homeowner's policy renewal certificate.

[6] Slidell property flood policy declarations page; New Orleans property flood policy declarations page.

[7] R. Doc. No. 146-2, Michael Desjardins aff.

[8] Pet. ¶¶ 46-58, 72-82.  Paulsen originally sued, in addition to State Farm, Carl Johnson, State Farm 3200 Ridgelake Agency, Denson Engineering, and Eberl Claims Service, Inc.  *Id.* ¶ 1.  However, all defendants but State Farm have previously been dismissed from this matter.  *See* R. Doc. No. 42, minute entry of June 19, 2007 (dismissing Carl Johnson as a defendant); R. Doc. No. 129, order of Jan. 17, 2008 (dismissing Randy Juge, improperly named as State Farm 3200 Ridgelake Agency); R. Doc. No. 28, order of May 22, 2007 (dismissing Denson Engineering); R. Doc. No. 31, order of May 31, 2007 (dismissing Eberl Claims Service, Inc.).

article 1953, unfair trade practices, and general negligence in violation of La. Civil Code Ann. articles 2315 and 2316.[9]  State Farm removed Paulsen's action to this Court on November 3, 2006.[10]

On June 13, 2007, Paulsen amended his complaint, alleging, in addition to his other claims, that State Farm did not identify, acknowledge, or compensate him for damage to his properties through its negligence, intentional acts, implementation of Hurricane Katrina protocols and procedures, and by attributing wind damage to flood damage.[11]  Paulsen also alleges that State Farm "applied, revised, altered, changed, and otherwise manipulated" the "property damage amounts, loss amounts, estimated costs of repair, and other relevant dollar-amount numbers," which resulted in amounts that do not reflect the actual amount of damage.[12] Finally, Paulsen claims that State Farm handled his claims differently from those claims of other policyholders and in such a way as to present obstacles to him that are not applied to all

---

[9] Pet. ¶¶ 59-71.

[10] R. Doc. No. 1, notice of removal.

[11] R. Doc. No. 39, am. compl. ¶¶ 1-5.  Specifically, Paulsen claims that State Farm failed to (1) identify, acknowledge, and compensate him for his wind and flood damage; (2) compensate him for actual damages by paying him amounts that do not reflect the true value of the losses; (3) acknowledge policy provisions and coverage in his homeowner's policy; (4) advise Paulsen as to available policy limits for flood and homeowner's coverage; (5) acknowledge Hurricane Katrina's "true wind speed and double eye wall effects on" his property; (6) comply with statutory requirements for adjusting claims; (7) identify and compensate him for structural damage; (8) adjust his claims according to Louisiana law; (9) participate in NFIP adjustment procedure, emergency rule 22 mediation, and private mediation; and (10) compensate him for loss of use and extended time for loss.  *Id.* ¶ 11(a)-(d), (f)-(g), (j)-(q).

[12] *Id.* ¶ 7.  Paulsen contends that State Farm calculated damages to "fit within or come in under certain total amounts for particular categories," thereby allowing State Farm to not compensate Paulsen fully.  Specifically, Paulsen alleges that State Farm (1) through its supervisor, Carl Johnson, revised and altered the field adjuster's assessments; (2) altered Paulsen's loss reports to keep his losses under eighty percent of the property value; and (3) improperly depreciated his losses to undervalue needed repairs.  *Id.* ¶ 11(e), (h)-(i).

policyholders.[13]

On December 28, 2007, State Farm, in its capacity as WYO insurer, filed this motion for summary judgment alleging that Paulsen failed to establish that he is entitled to an amount that exceeds the benefits already paid to him pursuant to his SFIP and that he has failed to comply with SFIP requirements.[14]  Paulsen contends that an estimate prepared by a State Farm-hired adjuster, Curtis Schumacher ("Schumacher"), is sufficient to establish the losses to his New Orleans property.[15]  As to the Slidell property, Paulsen claims that the estimate supplied to State Farm from Paulsen's contractor, McCarthy Construction ("McCarthy") is sufficient to establish his losses.[16]

## *LAW AND ANALYSIS*

### I.      **Standard of Law**

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of

---

[13] *Id.* ¶¶ 8-9.  For the purposes of this motion for summary judgment, the only claims against State Farm as WYO insurer are those claims asserted pursuant to the SFIP.  *See Wright v. Allstate Ins. Co.* (*Wright II*), 500 F.3d 390, 395 (5th Cir. 2007) (holding that "neither the NFIA nor the SFIP expressly authorizes policyholders to file extra-contractual claims against a WYO insurer").  Further, Paulsen does not allege, nor did the Court find evidence of, a dispute with respect to the amounts paid for personal property losses pursuant to the flood policies.

[14] R. Doc. No. 96, mot. summ. j.

[15] R. Doc. No. 102, mem. opp'n at 6-8.

[16] *Id.* at 11.

material fact.  Fed. R. Civ. P. 56(c).[17]  The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266, 274 (1986).  The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case.  *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the other party must come forward with specific facts showing that there is a genuine issue of material fact for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986).  The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' 'unsubstantiated assertions,' or by only a 'scintilla' of evidence."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).  Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202, 211-12 (1986).  The party responding to the motion for summary judgment may not rest upon the pleadings but must identify specific facts that establish a genuine issue.  *Id.*  The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be

---

[17] The *Federal Rules of Civil Procedure*, including Rule 56, were amended on December 1, 2007, in order to make the rules "more easily understood and to make style and terminology consistent throughout."  Fed. R. Civ. P. 56 advisory committee's note (2007 Amendment).  The changes "are intended to be stylistic only," rather than substantive.  *Id.*

drawn in [the nonmoving party's] favor." *Id.* at 255, 106 S. Ct. at 2513, 91 L. Ed. 2d at 216; *see*

*Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731, 741 (1999).


**II.     Discussion**


*A.     The National Flood Insurance Act*

The NFIP was established by the National Flood Insurance Act ("NFIA"), 42 U.S.C. §§

4001-4129 (2006), and it is administered through the Federal Emergency Management Agency

("FEMA").  *Wright v. Allstate Ins. Co.* (*Wright I*), 415 F.3d 384, 386 (5th Cir. 2005).  FEMA

sets the terms and conditions of all federal flood insurance policies, and those polices must be

issued in the form of a SFIP.  44 C.F.R. § 61.4(b); *Gowland v. Aetna*, 143 F.3d 951, 953 (5th Cir.

1998).  SFIP provisions can not "be altered, varied, or waived other than by the express written

consent of the [Federal Insurance] Administrator."   44 C.F.R. § 61.13(d); *Gowland*, 143 F.3d at

953.

Although a SFIP can be issued by a WYO insurance provider directly to consumers,

"[p]ayments on SFIP claims come ultimately from the federal treasury."[18]  *Wright I*, 415 F.3d at

386; *see Gowland*, 143 F.3d at 953.  Because the federal treasury is implicated in the payment of

flood claims, the provisions of a SFIP must be strictly construed and enforced.  *Wright I*, 415

F.3d at 387; *Gowland*, 143 F.3d at 954; *Hamide v. Omaha Prop. & Cas. Ins. Co.*, No. Civ.A. 03-

1405, 2004 WL 74316, at *2 (E.D. La. Jan. 14, 2004) (Fallon, J.) ("Failure to [strictly] construe

---

[18] FEMA regulations for the NFIP provide that "loss payments" shall be payable from federal funds.  44 C.F.R. pt. 62, app. A, art. III(D)(2) ("Loss payments include payments as a result of litigation that arises under the scope of this Arrangement [between WYOs and the federal government], and the Authorities set forth herein.").

runs afoul of the Appropriations Clause of the United States Constitution.").  "Under the

Appropriations Clause of the Constitution, '[m]oney may be paid out only through an

appropriation made by law; in other words, the payment of money from the Treasury must be

authorized by a statute.'"  *Wright I*, 415 F.3d at 387 (*quoting Office of Pers. Mgmt. v. Richmond*,

496 U.S. 414, 424, 110 S. Ct. 2465, 2471, 110 L. Ed. 2d 387, 399 (1990)).  Therefore, "[w]here

federal funds are implicated, the person seeking those funds is obligated to familiarize himself

with the legal requirements for receipt of such funds."  *Id.* at 388 (*citing Heckler v. Cmty. Health*

*Servs. of Crawford County, Inc.*, 467 U.S. 51, 63, 104 S. Ct. 2218, 2226, 81 L. Ed. 2d 42, 54

(1984)).


B.       *Establishing Loss Pursuant to SFIP Requirements*

          "In case of a flood loss to insured property, [the insured] must" fulfill a list of

requirements.  44 C.F.R. pt. 61, app. A(1) art. VII(J); *see Gowland*, 143 F.3d at 953-54.  One of

these SFIP requirements is that an insured must provide, pursuant to article VII(J)(3), "an

inventory of damaged property showing the quantity, description, actual cash value, and amount

of loss."  44 C.F.R. pt. 61, app. A(1) art. VII(J)(3); *see Guillot v. Allstate Ins. Co.*, Civil Action

No. 06-8050 (Vance, J.).  The documentation provided must strictly comply with the SFIP in

order for the insured to recover.  *See Gowland*, 143 F.3d at 954 ("[T]he provisions of an

insurance policy issued pursuant to a federal program must be strictly construed and enforced . . .

."); *Durkin v. State Farm Mut. Ins. Co.*, 3 F. Supp. 2d 724, 728 (E.D. La. 1997) (Vance, J.)

(granting a motion for summary judgment because the plaintiff had not submitted an inventory to

-7-

the insurer that met SFIP requirements).[19]

### 1.    The New Orleans Property

State Farm contends that the documentation provided by Paulsen with respect to the New Orleans property was not complete and did not, therefore, meet the requirements of articles VII(J)(3) of the SFIP.  Paulsen contends that the report completed by a State Farm-hired adjuster, Schumacher, satisfies his obligation pursuant to the SFIP.

Schumacher prepared two documents regarding the New Orleans property.  On October 12, 2005, Schumacher completed an estimate that calculated the "dwelling replacement cost" to be $362,006.44 ("Schumacher estimate"); on October 24, 2005, Schumacher completed a statement of loss for the flood damage to the New Orleans property ("Schumacher statement of

---

[19] Although State Farm does not argue that the proofs of loss filed by Paulsen were insufficient or untimely, the Court notes that the SFIP also requires, pursuant to article VII(J)(4), an insured to submit a complete, signed, and sworn proof of loss.  Article VII(J)(4) provides:

> Within 60 days after the loss, send us a proof of loss, which is your statement of the amount you are claiming under the policy signed and sworn to by you, and which furnishes us with the following information:
> > a.  The date and time of loss;
> > b.  A brief explanation of how the loss happened;
> > c.  Your interest (for example, "owner") and the interest, if any, of others in the damaged property;
> > d.  Details of any other insurance that may cover the loss;
> > e.  Changes in title or occupancy of the covered property during the term of the policy;
> > f.  Specifications of damaged buildings and detailed repair estimates;
> > g.  Names of mortgagees or anyone else having a lien, charge, or claim against the insured property;
> > h.  Details about who occupied any insured building at the time of loss and for what purpose; and
> > i.  The inventory of damaged personal property described in J.3. above.

Id. pt. 61, app. A(1) art. VII(J)(4).

loss"), which shows the covered flood loss to be $161,308.74.[20]  However, Paulsen states in his affidavit that Schumacher "showed me his written report which contained the amount of approximately $232,000 or somewhat more, for flood damage."[21]

First, Paulsen cannot rely on the Schumacher statement of flood loss provided the Court to support a further payment under the policy because the written Schumacher statement of loss submitted to the Court is less than the amount Paulsen received for the New Orleans property for flood damage.[22]  However, even if Paulsen is correct and the Schumacher statement of flood loss was for $232,000 before it was altered,[23] the document does not contain sufficient information to meet the requirements of article VII(J)(3) because it does not contain an inventory of damaged property, the quantity, or a description.  *See, e.g.*, 44 C.F.R. pt. 61, app. A(1) art. VII(J)(3).

In the other document Schumacher prepared, *i.e.*, the Schumacher estimate, the "dwelling replacement cost" listed is more than the amount Paulsen already received for flood damage and, if it contained the proper information, it could be used to document his loss in accordance with the SFIP.[24]  However, Schumacher's estimate does not provide actual cash values; rather, it only

---

[20] R. Doc. No. 102-2, mem. opp'n, ex. A at 9, Schumacher statement of loss; *id.* at 21-24, Schumacher estimate.

[21] Paulsen aff. ¶ 28.  It is unclear whether Paulsen is referring to Schumacher's statement of loss or Schumacher's estimate when Paulsen states that the written report contained a $232,000 amount for flood damage.

[22] Schumacher statement of loss; Desjardins aff.  As noted earlier in this opinion, Paulsen received $174,020.21 for flood damage and the Schumacher statement of loss provides that Paulsen is to receive $161,308.74.

[23] Any claims that the statement of loss and/or estimate were altered are not valid extra-contractual claims against State Farm in its capacity as a WYO insurer.  *See Wright II*, 500 F.3d at 395 (holding that "neither the NFIA nor the SFIP expressly authorizes policyholders to file extra-contractual claims against a WYO insurer").

[24] The "dwelling replacement cost" is $362,006.44, and Paulsen received $174,020.21 for flood damage to the property.  Schumacher estimate; Desjardins aff.

provides replacement cash values which does not meet the SFIP requirements.[25]  *Id.* ("[The insured] must [p]repare an inventory of damaged property showing . . . actual cash value . . . .").[26]

## 2.      *The Slidell Property*

With respect to the Slidell property, Paulsen argues that he provided State Farm with adequate documentation by submitting the McCarthy estimate which estimated the cost of repairs to be $288,583.58.[27]  State Farm contends that because Paulsen has not attached bills and receipts from repairs completed to the Slidell property, that the SFIP requirements have not been

---

[25] The SFIP provides three methods of settling losses, each of which is used for a different type of property: (1) replacement cost loss settlement, (2) actual cash value loss settlement ("ACV loss settlement"), and (3) special loss settlement  State Farm and Paulsen agree that the ACV loss settlement provisions apply to the New Orleans and Slidell properties.  *See* mem. opp'n at 1-2; R. Doc. No. 124, reply mem. to opp'n to mot. summ. j. at 2-3.  The ACV provisions provide for the payment of the *greater* of the ACV, as defined in article II(B)(2), or a proportion of the cost to repair or replace the damaged portion of the dwelling.  44 C.F.R. pt. 61, app. A(1)(V)(4)(a).  ACV is defined as "[t]he cost to replace an insured item of property at the time of the loss, less the value of its physical depreciation."  *Id.* art. II(B)(2).  The proportion is determined in the following manner:

> If 80% of the full replacement cost of the dwelling is less than the maximum amount of insurance available under the NFIP, then the proportion is determined by dividing the actual amount of insurance on the dwelling by the amount of insurance that represents 80% of the full replacement cost.  But if 80% of the full replacement cost of the dwelling is greater than the maximum amount of insurance available under the NFIP, then the proportion is determined by dividing the actual amount of insurance on the dwelling by the maximum amount of insurance on the dwelling by the maximum amount of insurance available under the NFIP.

*Id.*

[26] Neither party has argued that State Farm accepted Schumacher's report in accordance with article VII(J)(9), which provides:

> At our option, we may accept the adjuster's report of the loss instead of your proof of loss.  The adjuster's report will include information about your loss and the damages you sustained.  You mut sign the adjuster's report.  At our option, we may require you to swear to the report.

44 C.F.R. pt. 61, app. A(1) art. J(9).  However, even if State Farm did accept Schumacher's report, the report would not meet the SFIP requirements because Paulsen did not sign it.

[27] Mem. opp'n at 9-11; R. Doc. No. 102-6, mem. opp'n, McCarthy estimate.

met.[28]  However, the SFIP is not clear that an inventory of loss and bills and receipts have to be given to an insurer in order to adequately document the loss.  Article VII(J)(3) only states that the insured must "[a]ttach all bills, receipts, and related documents."  At the time Paulsen submitted the estimate, he may not have had any of these items.

The estimate does contain "an inventory of damaged property showing the quantity, description, actual cash value, and amount of loss" as required by article VII(J)(3).  Therefore, the McCarthy estimate may be sufficient to comply with the SFIP requirements.  *See, e.g.*, *Oechsner v. Hartford Fire Ins. Co.*, Civil Action No. 07-1436, 2008 WL 89514, at *3 (E.D. La. Jan. 7, 2008) (Barbier, J.) (denying a motion for summary judgment because "a written statement by Plaintiff setting forth the basis of the loss along with supporting documentation, including contractor's estimates, . . . very well may have been sufficient to establish both the nature of the loss and the amount of the claim").[29]  State Farm has, based upon the evidence it presented, failed to meet its burden of demonstrating the absence of a genuine issue of material fact as to whether the documentation, *i.e.*, the McCarthy estimate, was provided to State Farm and whether the information given sufficiently meets SFIP requirements.

Accordingly,

**IT IS ORDERED** that the motion for summary judgment filed by defendant, State Farm Fire and Casualty Company,[30] in its fiduciary capacity as a WYO program insurance provider is

---

[28] Mem. supp. at 9-12.

[29] Judge Vance's decision in *Guillot v. Allstate Ins. Co.* is distinguishable from this case.  In that case, the only relevant information provided by the plaintiff was an "almost illegible" damage estimate that did not include a complete inventory, did not specify the property to which the estimate applied, and did not specify whether the items were damaged or destroyed.  *Guillot*, Civil Action No. 06-8050 at 5.  State Farm has not argued to the Court that the McCarthy estimate is deficient in any of these ways.

[30] R. Doc. No. 96.

-11-

**GRANTED IN PART AND DENIED IN PART**.

**IT IS FURTHER ORDERED** that plaintiff's claims against State Farm pursuant to the flood insurance policy and with respect to the property located at 2320/2322 Jefferson Avenue, New Orleans, Louisiana 70115-6502 are **DISMISSED WITH PREJUDICE**.  State Farm's motion is **DENIED** with respect to plaintiff's flood policy claims against it for the property located at 56345 McManus Road, Slidell, Louisiana 70461.

New Orleans, Louisiana, February 8, 2008.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**