## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA


**ERIC A. PAULSEN**                                          **CIVIL ACTION**

**VERSUS**                                                   **No. 06-9546**

**STATE FARM INSURANCE COMPANY,** *et al.*                   **SECTION:  I/1**


### ORDER AND REASONS

Before the Court is a motion for partial summary judgment filed on behalf of defendant, State Farm Fire and Casualty Company ("State Farm") in its capacity as plaintiff's homeowner's policy insurer, to dismiss plaintiff's claims for bad faith and fraud.[1]  For the following reasons, the motion is **GRANTED IN PART AND DENIED IN PART**.


### *BACKGROUND*

Plaintiff, Eric A. Paulsen ("Paulsen"), owns two properties that were damaged when Hurricane Katrina made landfall in the New Orleans area on August 29, 2005.[2]  One property is located in Slidell, Louisiana ("Slidell property"); the other property is located in New Orleans,

---

[1] R. Doc. No. 98.

[2] R. Doc. No. 4-2, state ct. pet. ¶¶ 1, 18; R. Doc. No. 102-3, mem. opp'n to mot. summ. j., Paulsen aff. ¶¶ 2-3.

Louisiana ("New Orleans property").[3]  When Katrina made landfall, Paulsen held a homeowner's

insurance policy with State Farm.[4]  The homeowner's insurance policy on the Slidell property

limited the building coverage to $220,600.00; the homeowner's insurance policy on the New

Orleans property limited the building coverage to $337,100.00.[5]  Paulsen was paid $48,896.44

for building damage to the Slidell property; he was paid $55.520.15 for damage to the New

Orleans property.[6]

Paulsen filed this lawsuit in state court on August 28, 2006, bringing claims against State

Farm pursuant to La. Rev. Stat. Ann. §§ 22:658 and 1220(A) for breach of its duty to advise and

inform him regarding coverage, breach of contract,[7] unjust enrichment, and abuse of his rights.[8]

---

[3] Pet. ¶ 14; Paulsen aff. ¶¶ 2-3.

[4] Pet. ¶ 14; R. Doc. No. 97-5, partial mot. summ. j., ex. A-1, Slidell property homeowner's policy renewal certificate; R. Doc. No. 97-5, ex. B-1, New Orleans property homeowner's policy renewal certificate.  Paulsen also held flood insurance policies on these properties.  Pet. ¶ 11; R. Doc. No. 96-4, mot. summ. j., ex. A, Slidell property flood policy declarations page; R. Doc. No. 96-5, ex. B, New Orleans property flood policy declarations page.

[5] R. Doc. No. 98-2, statement of uncontested material facts, exs. A-1; *id.* ex. B-1, Slidell property homeowner's policy declarations page.  The New Orleans property also had dwelling extension coverage of up to $22,060.00, and the Slidell property had dwelling extension coverage of up to $33,710.00.  *Id.* exs. A-1, B-1.

[6] *Id.* exs. A-2, A-3, A-4, B-2, B-3, B-4.

[7] Specifically, Paulsen alleges that State Farm has failed to acknowledge and compensate him for his true amount of damages.  Pet. ¶¶ 8-10.  The damages that State Farm allegedly failed to identify and acknowledge as wind damages with respect to the New Orleans property are those to:  (1) the structure of the house; (2) the footing and foundation of the house; (3) the garage, including damage to the foundation; and (4) the driveway and driveway materials.  *Id.* ¶ 21.  With respect to the Slidell property, Paulsen claims State Farm failed to identify and acknowledge as wind damages those previously listed with regard to the New Orleans property and, further, damages to:  (1) the barn, (2) the work shed, (3) the fence and electrical fence, (4) gallery fans, and (5) the air handler.  *Id.* ¶ 25.  Paulsen also seeks the cost of:  (1) tree and stump removal, (2) mud and sludge removal, (3) elevation of the property to meet the new Base Flood Elevation, and (4) additional measures necessary to comply with building code requirements.  *Id.*
Paulsen also alleges that he has requested several pieces of information from State Farm that State Farm has failed to provide.  *Id.* ¶¶ 31-32.

[8] *Id.* ¶¶ 46-58, 72-82.  Paulsen originally sued, in addition to State Farm, Carl Johnson, State Farm 3200 Ridgelake Agency, Denson Engineering, and Eberl Claims Service, Inc.  *Id.* ¶ 1.  However, all defendants but State Farm have previously been dismissed from this matter.  *See* R. Doc. No. 42, minute entry of June 19, 2007 (dismissing Carl Johnson as a defendant); R. Doc. No. 129, order of Jan. 17, 2008 (dismissing Randy Juge,

Paulsen further alleged negligent misrepresentation and fraud pursuant to La. Civil Code Ann. article 1953, unfair trade practices, and general negligence in violation of La. Civil Code Ann. articles 2315 and 2316.[9]  State Farm removed Paulsen's action to this Court on November 3, 2006.[10]

On June 13, 2007, Paulsen amended his complaint, alleging, in addition to his other claims, that State Farm did not identify, acknowledge, or compensate him for damage to his properties through its negligence, intentional acts, implementation of Hurricane Katrina protocols and procedures, and by attributing wind damage to flood damage.[11]  Paulsen also alleges that State Farm "applied, revised, altered, changed, and otherwise manipulated" the "property damage amounts, loss amounts, estimated costs of repair, and other relevant dollar-amount numbers," which resulted in amounts that do not reflect the actual amount of damage.[12] Finally, Paulsen claims that State Farm handled his claims differently than other policyholders

---

improperly named as State Farm 3200 Ridgelake Agency); R. Doc. No. 28, order of May 22, 2007 (dismissing Denson Engineering); R. Doc. No. 31, order of May 31, 2007 (dismissing Eberl Claims Service, Inc.).

[9] Pet. ¶¶ 59-71.

[10] R. Doc. No. 1, notice of removal.

[11] R. Doc. No. 39, am. compl. ¶¶ 1-5.  Specifically, Paulsen claims that State Farm failed to (1) identify, acknowledge, and compensate him for his wind and flood damage; (2) compensate him for actual damages by paying him amounts that do not reflect the true value of the losses; (3) acknowledge policy provisions and coverage in his homeowner's policy; (4) advise Paulsen as to available policy limits for flood and homeowner's coverage; (5) acknowledge Hurricane Katrina's "true wind speed and double eye wall effects on" his property; (6) comply with statutory requirements for adjusting claims; (7) identify and compensate him for structural damage; (8) adjust his claims according to Louisiana law; (9) participate in NFIP adjustment procedure, emergency rule 22 mediation, and private mediation; and (10) compensate him for loss of use and extended time for loss.  *Id.* ¶ 11(a)-(d), (f)-(g), (j)-(q).

[12] *Id.* ¶ 7.  Paulsen contends that State Farm calculated damages to "fit within or come in under certain total amounts for particular categories," thereby allowing State Farm to not fully compensate Paulsen.  Specifically, Paulsen alleges that State Farm (1) through its supervisor, Carl Johnson, revised and altered the field adjuster's assessments; (2) altered Paulsen's loss reports to keep his losses under eighty percent of the property value; and (3) improperly depreciated his losses to undervalue needed repairs.  *Id.* ¶ 11(e), (h)-(i).

and in such a way as to present obstacles to him that are not applied to all policyholders.[13]

On December 28, 2007, State Farm, in its capacity as Paulsen's homeowner's insurer, filed this motion for partial summary judgment seeking to dismiss claims made by Paulsen for bad faith pursuant to §§ 22:658 and 22:1220.[14]  State Farm contends that there is no evidence of its arbitrary and capricious behavior and that it has a reasonable basis for partially denying Paulsen's damages claims.[15]  State Farm also seeks to dismiss Paulsen's claims for fraud pursuant to La. Civil Code Ann. article 1953 (1987) because Paulsen has failed to plead fraud with particularity and because there is no evidence to support Paulsen's claims.[16]  In opposition, Paulsen lists ten examples of State Farm conduct to support his claims of bad faith and fraud.[17]

*LAW AND ANALYSIS*

## I.      Standard of Law

Summary judgment is proper when, after reviewing "the pleadings, the discovery and disclosure materials on file, and any affidavits," the court determines there is no genuine issue of material fact.  Fed. R. Civ. P. 56(c).[18]  The party seeking summary judgment always bears the

---

[13] *Id.* ¶¶ 8-9.

[14] R. Doc. No. 98-4, mem. supp. at 2-3.

[15] *Id.* at 10-15.

[16] *Id.* at 15-20.

[17] R. Doc. No. 104.

[18] The *Federal Rules of Civil Procedure*, including Rule 56, were amended on December 1, 2007, in order to make the rules "more easily understood and to make style and terminology consistent throughout."  Fed. R. Civ. P. 56 advisory committee's note (2007 Amendment).  The changes "are intended to be stylistic only," rather than substantive.  *Id.*

initial responsibility of informing the court of the basis for its motion and identifying those
portions of the record that it believes demonstrate the absence of a genuine issue of material fact.
*Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 266, 274
(1986).  The party seeking summary judgment need not produce evidence negating the existence
of material fact, but need only point out the absence of evidence supporting the other party's
case.  *Celotex*, 477 U.S. at 323, 106 S. Ct. at 2553, 91 L. Ed. 2d at 274; *Fontenot v. Upjohn Co.*,
780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56(c), the
other party must come forward with specific facts showing that there is a genuine issue of
material fact for trial.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106
S. Ct. 1348, 1356, 89 L. Ed. 2d 538, 552 (1986).  The showing of a genuine issue is not satisfied
by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,'
'unsubstantiated assertions,' or by only a 'scintilla' of evidence."  *Little v. Liquid Air Corp.*, 37
F.3d 1069, 1075 (5th Cir. 1994) (citations omitted).  Instead, a genuine issue of material fact
exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving
party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d
202, 211-12 (1986).  The party responding to the motion for summary judgment may not rest
upon the pleadings but must identify specific facts that establish a genuine issue.  *Id.*  The
nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be
drawn in [the nonmoving party's] favor."  *Id.* at 255, 106 S. Ct. at 2513, 91 L. Ed. 2d at 216; *see
Hunt v. Cromartie*, 526 U.S. 541, 552, 119 S. Ct. 1545, 1551-52, 143 L. Ed. 2d 731, 741 (1999).

## II.   Discussion

### A.   *Louisiana Revised Statutes §§ 22:658 and 22:1220*[19]

Louisiana law establishes that insurers owe certain duties to their insureds in adjusting and paying claims.  Section 22:658 provides a penalty for failure to pay a claim within thirty days when that failure is arbitrary, capricious, or without probable cause.[20]  La. Rev. Stat. Ann. § 22:658 (2004).  Section 22:1220(B)(5) provides that an insurer owes a duty of good faith and fair dealing to an insured and it provides a penalty for failure to pay a claim within sixty days after receipt of satisfactory proof of loss from the claimant when that failure is arbitrary, capricious, or without probable cause.[21]  La. Rev. Stat. Ann. § 22:1220 (2004).  Virtually identical conduct is

---

[19] The Court has previously found that the versions of §§ 22:658 and 22:1220 in effect prior to the 2006 amendments are applicable in this case.  R. Doc. No. 139.

[20] Section 22:658 provides in pertinent part:
>    A. (1)  All insurers issuing any type of contract . . . shall pay the amount of any claim due any insured within thirty days after receipt of satisfactory proofs of loss from the insured . . . .
>        . . . .
>    B. (1)  Failure to make such payment within thirty days after receipt of such satisfactory written proofs and demand therefor or failure to make a written offer to settle any property damage claim, including a third-party claim, within thirty days after receipt of satisfactory proof of loss of that claim . . . or failure to make such payment within thirty days after written agreement or settlement . . . , when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of loss . . . .

[21] Section 22:1220 provides in pertinent part:
>    A. An insurer . . . owes to his insured a duty of good faith and fair dealing. The insurer has an affirmative duty to adjust claims fairly and promptly and to make a reasonable effort to settle claims with the insured or the claimant, or both. Any insurer who breaches these duties shall be liable for any damages sustained as a result of the breach.
>    B. Any one of the following acts, if knowingly committed or performed

-6-

prohibited in §§ 22:658 and 22:1220(B)(5); however, the insurer has sixty, rather than thirty, days to pay a claim pursuant to § 22:1220.[22]  *See Calogero v. Safeway Ins. Co. of La.*, 753 So. 2d 170, 174 (La. 2000).

In order to prevail on a claim pursuant to these sections, the insured must establish:  (1) that the insurer received satisfactory proof of loss,[23] (2) that the insurer failed to timely pay the claim, and (3) that the failure to pay the claim was arbitrary, capricious, or without probable cause.[24]  *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So. 2d 1012, 1020 (La. 2003) *Block v. St. Paul Fire & Marine Ins. Co.*, 742 So. 2d 746, 752 (La. Ct. App. 1999).  "The determination of whether an insurer acted in bad faith turns on the facts and circumstances of each case."  *Block*, 742 So. 2d at 752.

by an insurer, constitutes a breach of the insurer's duties imposed in Subsection A:
(1) Misrepresenting pertinent facts or insurance policy provisions relating to any coverages at issue.
(2) Failing to pay a settlement within thirty days after an agreement is reduced to writing.
(3) Denying coverage or attempting to settle a claim on the basis of an application which the insurer knows was altered without notice to, or knowledge or consent of, the insured.
(4) Misleading a claimant as to the applicable prescriptive period.
(5) Failing to pay the amount of any claim due any person insured by the contract within sixty days after receipt of satisfactory proof of loss from the claimant when such failure is arbitrary, capricious, or without probable cause.
C.  In addition to any general or special damages to which a claimant is entitled for breach of the imposed duty, the claimant may be awarded penalties assessed against the insurer in an amount not to exceed two times the damages sustained or five thousand dollars, whichever is greater.

[22] The Court recognizes that the conduct prohibited by § 22:1220(B) in its entirety is broader in scope than merely prohibiting bad faith failure to pay a claim.  However, State Farm only argues that its conduct is not arbitrary, capricious, or without probable cause as stated specifically in § 22:1220(B)(5).  Therefore, the Court will only address whether summary judgment is proper as to § 22:658 and § 22:1220(B)(5).

[23] Satisfactory proof of loss "is that which is sufficient to *fully apprise* the insurer of the insured's claim." *McDill v. Utica Mut. Ins. Co.*, 475 So. 2d 1085, 1089 (La. 1985).

[24] The phrase arbitrary, capricious, or without probable cause "is synonymous with 'vexatious.'"  *Reed v. State Farm Mut. Auto. Ins. Co.*, 857 So. 2d 1012, 1021 (La. 2003).

These sections are "penal in nature, and therefore must be strictly construed." *Hart v. Allstate*, 437 So. 2d 823, 827 (La. 1983); *see Delahoussaye v. Madere*, 733 So. 2d 679, 688 (5th Cir. 1999).  Accordingly, the insured must "clearly show[] that the insurer was arbitrary, capricious, and without probable cause in refusing to pay." *Block*, 742 So. 2d at 751; *Reed*, 857 So. 2d at 1021.  Further, "the statutory penalties are inappropriate when the insurer has a reasonable basis to defend the claim and acts in good-faith reliance on that defense." *Reed*, 857 So. 2d at 1021; *see Delahoussaye*, 733 So. 2d at 689 ("Our jurisprudence has recognized the right of insurance companies to litigate questionable claims without being subjected to damages and penalties.").

State Farm first contends that "there is no evidence that could provide a basis for concluding that State Farm acted arbitrarily, capriciously, or without probable cause" in adjusting Paulsen's claims.[25]  State Farm is correct that summary judgment is appropriate when there is *no* evidence of an insurer's bad faith conduct.  *See, e.g.*, *Gates v. Auto Club Family Ins. Co.*, Civil Action No. 06-4394, 2007 WL 1464259, at *4 (E.D. La. May 17, 2007) (Vance, J.) (granting summary judgment as to bad faith claims pursuant to §§ 22:658 and 22:1220 because the plaintiffs failed to provide any facts indicating that the insurer's conduct was arbitrary and capricious).  Paulsen has failed to provide any summary judgment-type evidence that State Farm refused to participate in mediation.[26]  Paulsen has also failed to provide any evidence that State Farm failed to respond to discovery or that State Farm failed to respond to written requests.  Therefore, those claims of bad faith should be dismissed.

---

[25] Mem. supp. at 10.

[26] Mem. opp'n at 9-10.

With respect to the Slidell property, Paulsen contends that Alan Korhonen ("Korhonen"), a State Farm-hired adjuster, informed Paulsen that the damage to the roof on the Slidell property would require that the roof be replaced and that, considering the severity of damage, Paulsen would receive full compensation from both policies.[27]  Paulsen also alleges that Korhonen altered his estimate from his initial oral opinion, thereby lowering Paulsen's recovery.[28]  Having reviewed the Paulsen and Shane Gates ("Gates") affidavits, the Court finds that the dispute over Korhonen's estimate presents a genuine issue of material fact as to whether State Farm adjusted the Slidell property in bad faith.[29]

With respect to the New Orleans property, Paulsen contends that State Farm failed to acknowledge and identify wind damage.[30]  For example, Paulsen claims that State Farm did not compensate him for the air conditioning system at the New Orleans property.[31]  State Farm does not provide evidence of whether it paid Paulsen for this alleged loss.  Therefore, whether State Farm failed to pay Paulsen for his air conditioning and whether that conduct constitutes arbitrary and capricious behavior is a genuine issue of material fact regarding State Farm's adjustment of the New Orleans property.

---

[27] R. Doc. No. 104-3, Paulsen aff. ¶ 47.  Korhonen's estimate provides payment for damage to the roof, but not replacement.  R. Doc. No. 116, Korhonen estimate at 2.

[28] Paulsen aff. ¶ 47; mem. opp'n at 5-6.

[29] Paulsen also contends that Michael Beattie, a State Farm adjuster, undervalued thirteen windows on the first floor, compensated Paulsen for eleven transoms when he lost thirteen, undervalued labor and materials needed to replace the 3/4 inch oak floors, underappraised three air compressors and the siding, and undervalued the property's water filtering system.  R. Doc. No. 104-4, Gates aff. ¶¶ 28-35.  He also argues that Korhonen undervalued labor and materials needed to replace the 3/4 inch oak floors.  *Id.* ¶ 31.

[30] R. Doc. No. 104, mem. opp'n to mot. summ. j. as to bad faith at 10.

[31] Paulsen aff. ¶ 64.  Paulsen also states that Curtis Schumacher, a State Farm-hired adjuster, "found that the [New Orleans] property required a new roof because of wind damage."  *Id.* ¶ 30.

State Farm next argues that, even if there is a dispute over what is owed to Paulsen, it cannot be liable for arbitrary and capricious behavior because it had a reasonable basis to dispute Paulsen's claims–the disagreement between its and Paulsen's experts regarding the amount and cause of damage.[32]  It is true that "bad faith should not be inferred from an insurer's failure to pay within the statutory time limits when such reasonable doubts [as to the extent and causation of a claim] exist."  *Block,* 472 So. 2d at 752.    However, determining whether State Farm had a reasonable basis to deny a portion of Paulsen's claims is a factual determination that this Court, considering the record presented, cannot decide on a motion for summary judgment.[33]

B.      *Fraud*

Pursuant to Louisiana law, "consent to a contractual obligation may be vitiated by 'error, fraud, or duress.'" *Cashman Equip. v. Acadian Shipyard, Inc.*, 66 Fed. App'x 524 (5th Cir. 2003) (*citing* La. Civ. Code Ann. art. 1948 (1987)).  Article 1953, which deals specifically with fraud, provides:

> Fraud is a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other.  Fraud may also result from silence or inaction.

La. Civ. Code Ann. art. 1953.  Fraud pursuant to this article "need only be proven by a

---

[32] Mem. supp. at 10-15.

[33] The Court notes, however, that State Farm in its capacity as Write Your Own ("WYO") program carrier filed a reply to Paulsen's opposition to this motion for partial summary judgment.  R. Doc. No. 122.  State Farm contends in its reply that Paulsen may not recover pursuant to state law, including for bad faith pursuant to §§ 22:658 and 22:1220 and for fraud pursuant to article 1953, under the flood policy against it in its capacity as WYO insurer. The Court agrees.  It is well-settled law that a homeowner may not recover pursuant to state law for any extra-contractual claims against an insurer in its capacity as WYO program carrier. *See Wright v. Allstate Ins. Co.*, 500 F.3d 390, 398 (5th Cir. 2007).

preponderance of the evidence and may be established by circumstantial evidence." *Id.* art. 1957.  In order to establish fraud pursuant to article 1953, two elements must be met: "(1) an intent to defraud or to gain an unfair []advantage and (2) a resulting loss or damage." *Tubos de Acero de Mex., S.A. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 479 (5th Cir. 2002); *see La. Pigment Co., L.P. v. Scott Constr. Co.*, 945 So. 2d 980, 983-84 (La. Ct. App. 2006).

State Farm contends that Paulsen failed to plead fraud with particularity and, further, that Paulsen provides no evidence of fraud.[34]  First, State Farm points to the absence of factual support for Paulsen's contention that he was not fully compensated as part of State Farm's implementation of Hurricane Katrina protocols, operational guidelines, and procedures.[35] Paulsen, outside of the bare allegations in his amended complaint, provides the Court with no evidence of such fraud.[36]  Next, State Farm points to the lack of evidence in support of Paulsen's allegation that State Farm handled his claims differently than other policyholders and that State Farm has presented obstacles and applied procedures to him but not to other policyholders.[37] Paulsen has provided no summary judgment-type evidence to support these allegations.  Finally, as with Paulsen's claims pursuant to §§ 22:658 and 22:1220, Paulsen presents no evidence that State Farm failed to participate in mediation, respond to discovery, and respond to written requests.  Therefore, summary judgment is proper as to these claims of fraud pursuant to La.

---

[34] Mem. supp. at 15-20.

[35] *Id.* at 18-19 n.4.

[36] Paulsen also does not address this claim in his opposition memorandum.

[37] Mem. supp. at 24.

Civil Code article 1953.[38]

Therefore, the only claims of fraud remaining are that (1) Korhonen altered his verbal findings with respect to the roof on the Slidell property, (2) Korhonen and Michael Beattie, a State Farm adjuster, undervalued policy benefits, and (3) State Farm failed to pay for identifiable wind damage.  Although the Court's review of Paulsen's summary judgment-type evidence in opposition to the motion appears to demonstrate a very tenuous fraud claim, at this stage the Court will not preclude the claims set forth in this paragraph from further proceeding.

Accordingly,

**IT IS ORDERED** that the motion for partial summary judgment filed by defendant, State Farm Fire and Casualty Company,[39] in its capacity as plaintiff's homeowner's insurer, to dismiss all bad faith and fraud claims against it is **GRANTED IN PART AND DENIED IN PART**.

**IT IS ORDERED** that plaintiff's claims pursuant to La. Civil Code art. 1953 that plaintiff was not fully compensated as part of defendants's implementation of protocols and procedures and that defendant handled his claims differently than those of other policyholders are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that plaintiff's claims of bad faith pursuant to La. Rev. Stat. §§ 22:658 and 22:1220 and fraud pursuant to La. Civil Code art. 1953 that are premised upon defendant's failure to participate in mediation, failure to respond to discovery, and failure

---

[38] Any allegation by Paulsen that La. Civil Code art. 1958 is an applicable penalty provision for the acts of State Farm is without merit.  Mem. opp'n at 12.  Article 1958 provides that "[t]he party against whom rescission is granted because of fraud is liable for damages and attorneys fees."  Paulsen is not seeking rescission of any contract, and, therefore, article 1958 does not apply.  *See, e.g.*, *Scottsdale Ins. Co. v. Dorman*, 153 F. Supp. 2d 852, 857-58 (E.D. La. 2001) (Clement, J.).

[39] R. Doc. No. 97.

to respond to written requests are **DISMISSED WITH PREJUDICE**.

IT IS FURTHER ORDERED that all of plaintiff's bad faith and fraud claims against

defendant in its capacity as WYO insurer are **DISMISSED WITH PREJUDICE**.

IT IS FURTHER ORDERED that the motion is **DENIED** in all other respects.

New Orleans, Louisiana, February 12, 2008.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**